Robert T. IRVIN, Plaintiff/Appellant,

v.

CITY OF CLARKSVILLE, Defendant/Appellee.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Oct. 7, 1988.

Permission to Appeal Denied by Supreme Court Jan. 3, 1989.

Robert T. Irvin, Mount Juliet, for plaintiff/appellant.

Edd S. Hurt, Jr., Clarksville, for the defendant/appellee.

## OPINION

KOCH, Judge.

This appeal involves a city's demolition of a fire-damaged house. An owner of an interest in the property filed a *pro se* action in the Law and Equity Court for Montgomery County seeking compensatory and punitive damages. The trial court heard the matter without a jury and entered a judgment for the city at the close of the plaintiff's proof. The property owner has appealed. We affirm the judgment of the trial court.

### I.

Robert Irvin and his mother, Louise Irvin, are "legal co-owners" of a house on Ninth Street in Clarksville. After the house was seriously damaged by fire, they applied to the Clarksville–Montgomery County Regional Planning Commission ("Commission") for funds to repair it. However, while the loan application was pending, the Commission gave written no-

tice to Louise Irvin that a hearing had been scheduled to determine whether the remnants of the house should be torn down. Robert Irvin had actual notice of the hearing even though he was not served with written notice.

The Commission conducted the hearing on June 26, 1978. It found that the house was dangerous and detrimental to the health of the residents of Clarksville and directed that it be torn down unless Mrs. Irvin substantially improved it within 120 days. On August 16, 1978, Mrs. Irvin signed a document stating that repairs to the house were impractical and authorizing the City of Clarksville ("City") to demolish the building. It was thereafter destroyed, and Robert Irvin's long odyssey through the legal system began.

Mr. Irvin filed a *pro se* complaint in the Law and Equity Court for Montgomery County in June, 1979, alleging that his mother's authorization had been coerced by threats of imprisonment and that the Commission's procedure violated his due process rights. The trial court dismissed the action in March, 1980 for lack of subject matter jurisdiction. This Court reversed the trial court's decision on October 20, 1980.[1]

On remand, Mr. Irvin retained counsel who filed an amended complaint in March, 1981. Among other things, the amended complaint alleged that Mr. Irvin had been deprived of the value of his property without due process, that the City had "negligently torn down a piece of property owned by two owners without obtaining the consent of both parties," that the City was guilty of "improper discrimination" because it had not torn down other houses in greater need of repair, and that the City's actions were "wanton and willful in the disregard of proper procedure."

Mr. Irvin became unhappy with his lawyer because of the slow progress of the suit. In December, 1982, his lawyer moved to withdraw as counsel after Mr. Irvin filed a complaint with the Board of Professional Responsibility. The trial court granted the motion, and in February, 1983, Mr. Irvin notified the court that he intended to represent himself during the remainder of the proceedings.

In May, 1983, Mr. Irvin filed a second amended complaint increasing the prayer for damages. The trial court heard the case without a jury on July 7, 1983 and dismissed the case at the close of Mr. Irvin's proof after finding that Mr. Irvin had failed to prove either that he owned an interest in the house or that he had been damaged by the house's demolition.

Mr. Irvin filed a flurry of motions and other documents after the trial. Among them were a "petitioner to rehear" and a motion for new trial. The trial court denied Mr. Irvin's motion to rehear on September 16, 1983, and Mr. Irvin filed a notice of appeal on September 21, 1983.

For some reason not apparent in the record, no action was taken in this case for over three years. On February 9, 1987, the trial court entered a second order denying Mr. Irvin's petition to rehear. Mr. Irvin filed a second notice of appeal on March 3, 1987. A woefully inadequate record was filed in this Court in June, 1987. We ordered the preparation of a supplemental record which was filed in September, 1987.

## II.

■ We take up first Mr. Irvin's assertion that the trial court failed to provide him the "liberal construction due a pro se hearing". Mr. Irvin does not state precisely how the trial court failed to make appropriate allowances for the fact that he was representing himself. We surmise that his complaint is based on the length of time it took to get the case to trial and on the trial court's dismissal of his complaint at the close of his proof.

Conducting litigation involving a *pro se* litigant can be difficult and challenging. On one hand, a trial judge must accommodate the *pro se* litigant's legal naivete, and,

---

**1.** *Irvin v. Clarksville–Montgomery County Regional Planning Comm'n,* Montgomery Law & Equity (Tenn.Ct.App. Oct. 20, 1980).

on the other hand, he must not allow the *pro se* litigant an unfair advantage because the litigant represents himself. As Judge Blackburn noted on the first appeal of this case:

> Of course this status of affairs presents a tremendous burden for the Judge of the Court to carry in first seeing that the litigation is conducted in an orderly fashion and second that the parties are given every opportunity to present their grievances for resolution. Such requires great skill on the part of the Judge both intellectually and diplomatically.

*Irvin v. Clarksville–Montgomery County Regional Planning Comm'n*, Montgomery Law & Equity, slip op. at 2 (Tenn.Ct.App. Oct. 20, 1980).

*Pro se* litigants who invoke the complex and sometimes technical procedures of the courts assume a very heavy burden. *Gray v. Stillman White Co.*, 522 A.2d 737, 741 (R.I.1987). Conducting a trial with a *pro se* litigant who is unschooled in the intricacies of evidence and trial practice can be difficult. *Oko v. Rogers*, 125 Ill.App.3d 720, 81 Ill.Dec. 72, 75, 466 N.E.2d 658, 661 (1984). Nonetheless, trial courts are expected to appreciate and be understanding of the difficulties encountered by a party who is embarking into the maze of the judicial process with no experience or formal training.

Parties who choose to represent themselves are entitled to fair and equal treatment. *Childs v. Duckworth*, 705 F.2d 915, 922 (7th Cir.1983). However, they are not excused from complying with applicable substantive and procedural law, *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir.1984); *Wolfel v. United States*, 711 F.2d 66, 67 (6th Cir.1983), and they must follow the same procedural and substantive law as the represented party. *See, e.g., Dethlefs v. Beau Maison Dev. Corp.*, 511 So.2d 112, 118 (Miss.1987); *Heinsch v. Lot 27*, 399 N.W.2d 107, 109 (Minn.Ct.App.1987).

Accordingly, the United States Court of Appeals for the District of Columbia has held:

> At least where a litigant is seeking a monetary award, we do not believe *pro se* status necessarily justifies special consideration ... While such a *pro se* litigant must of course be given fair and equal treatment, he cannot generally be permitted to shift the burden of litigating his case to the courts, nor to avoid the risks of failure that attend his decision to forgo assistance.

*Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1194 (D.C.Cir.1983).

*Pro se* litigants are entitled to the same liberality of construction with regard to their pleadings that Tenn.R.Civ.P. 1, 8.05 & 8.06 afford any other litigant. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). The record convinces us that the trial court afforded Mr. Irvin all the liberality in procedural matters due him.

Mr. Irvin points to the long delay in setting a trial date as evidence that the trial court did not give him proper consideration. While the record shows that obtaining a hearing date was not an easy task, we do not attribute the delay to the trial court.

A special judge from Nashville heard the case because the regular judge had recused himself at Mr. Irvin's request. In May, 1981, Mr. Irvin's counsel filed a motion to set the case. However, because the trial judge was in Nashville, Mr. Irvin's attorney was in Chattanooga, and defense counsel was in Clarksville, the parties had difficulty coordinating their schedules. Mr. Irvin's counsel withdrew from the case before a trial date could be set. Mr. Irvin filed his own motion to set on February 22, 1983, and the case was heard on July 7, 1983.

The delay in bringing the case to trial was, in large measure, due to the conduct of the parties. No evidence shows that the delay affected the suit's outcome. Therefore, in accordance with Tenn.R.App.P. 36(b), we find this issue to be without merit.

### III.

The briefs and other papers Mr. Irvin has filed in this Court do not begin to meet the

requirements of the Tennessee Rules of Appellate Procedure. However, recognizing the admonition in Tenn.R.App.P. 1 that the appellate rules should be construed to afford all parties a hearing on the merits, we have exercised our prerogative pursuant to Tenn.R.App.P. 2 to relax the strict requirements of the appellate rules insofar as Mr. Irvin's papers are concerned.

■ There are other omissions in the appeal we cannot waive. Mr. Irvin seeks to raise certain factual issues and yet has elected not to file a transcript or a statement of the evidence. His failure to do so has left him at a distinct disadvantage. In the absence of a transcript, this Court presumes that sufficient evidence existed to support the trial court's decision. *Daniel v. Metropolitan Gov't of Nashville,* 696 S.W.2d 8, 10–11 (Tenn.Ct.App.1985); *Lallemand v. Smith,* 667 S.W.2d 85, 88 (Tenn.Ct.App.1983).

### IV.

■ One issue we can consider is whether the trial court erred when it found that Mr. Irvin failed to prove an ownership interest in the property. From what we can glean from the record, Mr. Irvin failed to introduce a copy of the deed during the presentation of his evidence, and the trial court would not permit him to do so after he rested his case. Notwithstanding these procedural niceties, the trial court erred by basing its decision, in part, on Mr. Irvin's failure to prove his ownership interest in the property.

Mr. Irvin alleged in his amended complaint that he was a "legal co-owner in the interest of property located at 314 Ninth Street, in Clarksville, Tennessee." The City's answer admitted that it was "informed and believes that the petitioner, Robert T. Irvin, is the son of Mrs. Louis Irvin and that they are, as averred by plaintiff, the legal co-owner in the interest of property located at 314 Ninth Street in the City of Clarksville, Tennessee."

In light of the City's admission, the trial judge should not have required Mr. Irvin to prove that he owned an interest in the property. Admissions in pleadings are judicial admissions that are conclusive on the pleader until withdrawn or amended. *John P. Saad & Sons v. Nashville Thermal Transfer Corp.,* 642 S.W.2d 151, 152 (Tenn.Ct.App.1982). Thus, when the allegations in a complaint are admitted in the answer, the subject matter of the allegations is removed as an issue, and no proof is necessary. *Rast v. Terry,* 532 S.W.2d 552, 554 (Tenn.1976); *Wilson v. Maury County Bd. of Educ.,* 42 Tenn.App. 315, 326, 302 S.W.2d 502, 507 (1957).

### V.

■ Mr. Irvin also takes issue with the other basis of the trial court's decision—his failure to prove that he had been damaged by the demolition of the house. He insists that he introduced proof of his damages.

A trial court's decision to grant an involuntary dismissal under Tenn.R.Civ.P. 41.-02(2) is reviewed in accordance with Tenn.R.App.P. 13(d). *College Grove Water Util. Dist. v. Bellenfant,* 670 S.W.2d 229, 231 (Tenn.Ct.App.1984); *Nold v. Selmer Bank & Trust Co.,* 558 S.W.2d 442, 444 (Tenn.Ct.App.1977). Accordingly, we are required to review the record de novo and to presume that the trial court's factual findings are correct unless the evidence preponderates otherwise.

There can be no award of compensatory or punitive damages without proof of damages. *Inman v. Union Planters Nat'l Bank,* 634 S.W.2d 270, 272 (Tenn.Ct.App.1982). Punitive damages may not be awarded where there has been no actual loss or where actual damages have not been proven. *Liberty Mut. Ins. Co. v. Stevenson,* 212 Tenn. 178, 180, 368 S.W.2d 760, 761 (1963); *Seat v. Moreland,* 26 Tenn. (7 Hum.) 575, 576 (1847); *Cullum & Maxey Camping Center, Inc. v. Adams,* 640 S.W.2d 22, 26 (Tenn.Ct.App.1982); *Aycock v. Nashville, C. & St. L. Ry.,* 4 Tenn.App. 655, 668 (1927).

We have already noted that Mr. Irvin has not provided and did not attempt to provide this Court with a transcript of the proceedings or with a statement of the evidence permitted by Tenn.R.App.P. 24(c) when no

transcript is available. Mr. Irvin must bear the consequences of his decision even though he is a *pro se* litigant. In the absence of a record of the evidence, we presume that the trial court's determination that Mr. Irvin failed to prove his damages was supported by the evidence.

## VI.

 Mr. Irvin has raised some additional points that should be addressed. First, he has filed a Tenn.R.Civ.P. 60 motion in this Court seeking relief from the trial court's judgment. The Tennessee Rules of Civil Procedure do not apply to the Court of Appeals; therefore, this motion should have been directed to the trial court. Mr. Irvin also alleges that he has been denied the right to counsel and the right to a speedy trial, but these rights are not applicable to civil matters.

Mr. Irvin further insists that a conflict of interest existed. A partner in the law firm representing the City also notarized the 1968 deed in which he conveyed a life estate in the Ninth Street property to his mother. Even though the deed is not strictly a part of the record, the act of notarizing a document of conveyance presents no conflict of interest. At best it illustrates that a member of the City's law firm had actual knowledge of the deed. This information is a matter of public record. No danger arises that confidences or secrets might be revealed.

Finally, Mr. Irvin insists that the City was acting in a discriminatory manner when it demolished the house on Ninth Street because it did not tear down other houses that were in worse condition. We have no record before us that this was the case. However, Mr. Irvin would not be entitled to relief even if we did. The conscious exercise of some selectivity in enforcement is not actionable in the absence of proof that the enforcement was deliberately based on an impermissible reason such as race, religion, or some other arbitrary standard. *Patterson v. Hunt,* 682 S.W.2d 508, 517 (Tenn.Ct.App.1984).

## VII.

The judgment of the trial court is affirmed, and the case is remanded for whatever further proceedings are required. The costs of the appeal are taxed to Robert T. Irvin for which execution, if necessary, may issue.

TODD, P.J., and LEWIS, J., concur.