IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 7, 2012 Session

**HERBERT L. HALL v. CHONA S. HALL**

**Appeal from the Circuit Court for Hamilton County**
**No. 10D1989     Jeff Hollingsworth, Judge**

**No. E2012-00394-COA-R3-CV-FILED-DECEMBER 21, 2012**

This appeal arises from a divorce.  After approximately four years of marriage, Herbert L. Hall ("Husband") sued Chona S. Hall ("Wife") for divorce in the Circuit Court for Hamilton County ("the Trial Court").  The Trial Court granted the parties a divorce and divided the marital estate.  Wife filed a motion for a new trial, which was denied.  Wife appeals to this Court, arguing, among other things, that the Trial Court erred in entering a decree for divorce when the parties had not engaged in mediation, and, that the Trial Court failed to adhere to applicable local court rules.  We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, JJ., joined.

Philip M. Jacobs, Cleveland, Tennessee, for the appellant, Chona S. Hall.

John R. Morgan, Chattanooga, Tennessee, for the appellee, Herbert L. Hall.

# OPINION

## Background

The record in this case contains no trial transcript. The record does contain a Statement of the Evidence submitted by Husband pursuant to Rule 24 of the Tennessee Rules of Appellate Procedure and approved by the Trial Court.

The parties were married in June 2006. In October 2010, Husband sued Wife for divorce. Wife, after some delay and acting *pro se* at that time, filed an answer and counterclaim in January 2011. Though mediation was scheduled for August 9, 2011, and August 15, 2011, the mediator indicated that Wife unilaterally had cancelled the mediation. This case was tried in October 2011.

The Statement of the Evidence contains an account of the testimony at trial, which we reproduce subject to our formatting changes:

Plaintiff was 60 years old and employed with BASF as a chemical technician for some 16 years. He was currently in a Chapter 13 bankruptcy plan. This was a five year marriage. The home they lived in was his home prior to the parties' marriage. Plaintiff's earnings were $26.00 per hour. He had been married to his first wife for 25 years, who had died. He then married the defendant within one year following the death of his wife. Plaintiff's testimony further with regard to the grounds for divorce were that his wife had refused to sleep in the bed that he had owned with his former [wife] and therefore, refused to sleep with him. She was simply argumentative and difficult to get a long with. There had never been any physical altercations between the two parties. At the time of the parties' marriage, the defendant was still living with her former husband in his home, even though they were divorced. The defendant had never worked, and she received her social security disability of approximately $973.00 per month throughout the marriage. The plaintiff paid all of the household bills and the defendant was free to use her social security earnings as she saw fit. With regard to the home currently occupied by both parties, the plaintiff testified that he had purchased the home in 1986. He has always paid the mortgage, and currently through the Chapter 13 bankruptcy plan, and that there had been no appreciation in value or significant improvements at all during the five year marriage to the defendant.

Regarding other assets acquired during the marriage, the plaintiff testified that he had purchased several vacant lots at a back tax sale using life insurance proceeds following his first wife's death; he still owns those lots, but they are apparently [] not a very good investment. There has been no appreciation and he has had no offers to purchase any of them. During the course of the marriage, the plaintiff purchased a quadraplex rental unit, borrowing money from the credit union for the purchase of the same. The plaintiff was unable to keep up with the payments due to the condition of the rental units, and he lost the rental property to foreclosure and further, suffered a deficiency judgment in the amount of $24,000.00 that he is still paying on through his bankruptcy. The defendant is the owner of a 2001 Nissan Xterra that she brought into the marriage, and that there was a loan of some $2,000.00 that the plaintiff was paying through the Chapter 13. He fully intended for her to keep that car and that he would pay the balance on the loan through the plan. The plaintiff drove an old truck that had no lien. With regard to personal property, the plaintiff testified that certainly any property that the defendant brought into the marriage was hers. He further acquiesced later on that she could have all of the property listed in her itemization of property, including the bedroom suite that he had purchased and was still paying for during the course of the marriage. The plaintiff testified that he has a fishing boat that he paid $8,000.00 for using monies from the sale of the boat that he had owned prior to this marriage.

The first exhibit offered by the plaintiff was a statement for his 401(k), which he has through his employer. The testimony and the document revealed that the 401(k) had actually lost value due to the recession, even taking into consideration the loan that he was paying back on the 401(k). The plaintiff testified that he makes approximately $67,000.00 per year through his employment with BASF. Exhibit 2 offered by the plaintiff was his Income and Expense Statement which detailed his gross earnings and his ongoing monthly expenses, the most significant of which was the Chapter 13 bankruptcy plan payment, which resulted in a break even, at best or net loss on a monthly basis.

The defendant was offered the opportunity to cross examine her husband on the stand, and primarily made accusations with regard to whether or [sic] he and her adult daughter were, at some point, having an affair during the course of the marriage, which [Husband] denied.

The defendant then took the stand and testified . . . Since the marriage in 2006, there had nothing more then ordinary maintenance and some

-3-

landscaping planted at the residence; that she earns $973.00 per month in social security disability payments and that she has Medicare health insurance. She had no further accusations regarding Mr. Hall's conduct, and that she was also insured on his employment carrier through BASF. Defendant further testified with regard to some credit card indebtedness, that she continues to have in the amount of $5,000.00 to Belk, $6,000.00 on a Mastercard, $5,000.00 on a JCPenney card, and that she had a debt with Home Shopping Network that she had recently paid off. The defendant then provided the itemized list of furniture which she wanted from the home, and plaintiff stipulated that she could have all those items listed. The defendant testified that she would like to remain in house, even though it was her husband's and that she spent her social security monies for food herself.

Defendant further testified that she had given her husband $4,000.00 from a life insurance policy she cashed in, but that she could not remember whether or not he had ever repaid the same, nor did she have any information with regard to what the loan for the 401(k) had been used for. She was not a party to the bankruptcy proceeding. On cross examination, the defendant admitted that she did not have any pension or retirement plan, but that she had cashed in the same from her previous employment. She was the owner of a house in the Philippines which was paid for. She paid approximately $14,00.00 [sic] for it several years ago. The dwelling was actually a duplex occupied by her son who does not pay her any rent. The defendant could not remember either way whether or not the $4,000.00 she gave her husband had been paid back, though he asserted it had been. The defendant further testified under cross examination that she brought all of the credit card debt which she now has into the marriage, and again asserted that she had no other place to move at this time.

The Trial Court subsequently entered the Final Decree of Divorce in November 2011, finding and holding as follows:

This cause came on to be heard on the 25th day of October, 2011, upon the original complaint for divorce, the filing by the *pro se* defendant, which the Court deemed as an answer and countercomplaint, and upon the testimony of witnesses in open court, presentation of documentary evidence and the entire record, the Court finds that the parties should be declared divorce pursuant to *T.C.A.* §36-4-129. It is accordingly

**ORDERED, ADJUDGED** and **DECREED** as follows:

1. The parties are granted an absolute divorce, pursuant to *T.C.A.* §36-4-129 and that the bonds of matrimony now uniting the parties are hereby forever and perpetually dissolved, and both parties are restored to all rights and privileges of unmarried persons.

2. **Real Property Located at 6461 Longwood Lane.** The residence located at 6461 Longwood Lane, Harrison, Tennessee was the plaintiff's separate property purchased by him prior to the marriage. There has been no appreciation in value during the course of the five (5) year marriage, or any substantial contributions thereto, on the part of the defendant, and that as such, all right, title and interest to said residence shall remain that of plaintiff, Herbert L. Hall.

Beginning October 25, 2011, the defendant has 20 days in which to vacate herself and her belonging[s] from the residence located at 6461 Longwood Lane, Harrison, Tennessee, that date being on or before November 15, 2011.

3. **Real Property Located [in] the Philippines.** The defendant is awarded all right, title and interest in and to the residential dwelling she purchased in the Philippines free and clear from any and all claims of the Plaintiff.

4. **Vacant Lots.** Plaintiff is awarded all right, title and interest in an[d] to the ten (10) vacant lots he purchased at the Back Tax Sale, as the proceeds to purchase said lots were from his previous wife's life insurance policy, which would be separate property.

5. **Automobiles.** Each party shall retain their respective vehicles free and clear from any and [sic] claims of the other party. The defendant is awarded the 2001 Nissan Xterra, and the plaintiff shall continue to pay the balance of the debt incurred thereon through his Chapter 13 bankruptcy. The plaintiff is awarded all right, title and interest in and to the 1992 Ford Ranger and the 1994 Dodge pick up truck which are free of any liens. Each party is responsible for any cost incident thereto, including registrations, taxes, insurance, etc.

6. **Home Furnishing and Personal Property.** The defendant, Chona S. Hall, is awarded all right, title and interest in and to the list of items of furniture and personal property which was submitted by her in the course

of the trial as Exhibit "3," the same being attached hereto and incorporated by reference. Defendant is awarded said items free and clear from any and all claims of the plaintiff. Defendant shall remove all of the said items from the residence located at 6461 Longwood Lane, Harrison, Tennessee within 20 days of October 25, 2011, the same date that she shall vacate the premises.

Plaintiff, Herbert L. Hall, is awarded all right, title and interest in and to all other personal property not set forth in Exhibit "3," including the fishing boat and miscellaneous tools and equipment.

7.  **401(k) Retirement Account.** Plaintiff, Herbert L. Hall, shall retain all right, title and interest in an[d] to the 401(k) retirement account maintained on his behalf with Fidelity Group through his employer, BASF, as the same has not increased in any value during the course of the marriage, and has, in fact, lost value as most security investments have over the last several years.

8.  **Alimony.** The defendant's counter claim for alimony to be paid by the plaintiff is denied, and no further alimony or support is awarded. While the defendant certainly has some need for support, the current financial circumstances of the plaintiff, including his Chapter 13 bankruptcy and loan repayment obligation from his 401(k) loan demonstrate a lack of ability to pay alimony or support.

9.  **Credit Card Debts.** All credit card debts listed in the separate name of the defendant shall be her obligation, and she shall indemnify and hold the plaintiff harmless therefore. Said debts were her separate property and her separate obligations which she had entered into prior to the marriage to the plaintiff.

10.  **Court Costs.** The costs of this cause are taxed against the plaintiff, Herbert L. Hall . . . .

Wife, by then represented by counsel, moved for a new trial pursuant to Rule 59 of the Tennessee Rules of Civil Procedure. Wife's motion for a new trial stated:

Defendant, CHONA HALL, by and through her Attorney and pursuant to Rule 59 of the Tennessee Rules of Civil Procedure, moves this Court for a new trial. In support of this Motion, the Defendant would show unto the Court that there is evidence to support a finding that the Defendant is entitled to

relief from the judgment because of mistake, inadvertence, surprise or excusable neglect. Further the parties did not attend mediation as required by T.C.A. 36-4-131 and the same was not waived by the Court.

**WHEREFORE**, the Defendant prays that the Court enter an order granting a new hearing on all issues including but not limited to, grounds for divorce, alimony, property division and attorney fees.

In January 2012, a hearing was held on Wife's motion for a new trial. Wife testified at this hearing. The Trial Court subsequently denied Wife's motion. In its order denying the motion for a new trial, the Trial Court stated, in relevant part: "[T]his Court finds that the Court in effect waived mediation when the parties did not raise the issue, the Defendant waived her right to discovery when she failed to file a Motion to Compel, and the Court weighed the evidence presented at trial and there is no basis for altering the previous judgment." Wife appeals to this Court.

### Discussion

Though not stated exactly as such, Wife presents four issues on appeal: 1) whether the parties' failure to engage in mediation warrants a new trial; 2) whether Wife is entitled to a new trial because interrogatories and request for production for documents were not answered; 3) whether Wife is entitled to a new trial or different distribution of the estate based upon the Trial Court allegedly erring in its allocation of Husband's 401(k); and, 4) whether Wife is entitled to a new trial or different distribution of the estate on the basis that the Trial Court allegedly did not comply with its local rules of civil practice.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address whether the parties' failure to engage in mediation warrants a new trial. Tennessee law provides:

(a) Except as provided in subsections (b), (c) and (d), in any proceeding for divorce or separate maintenance, the court shall order the parties to participate in mediation.

-7-

(b) The court may waive or extend mediation pursuant to subsection (a) for reasons including, but not limited to:

(1) Any factor codified in § 36-6-409(4);

(2) Either party is unable to afford the cost of the mediation, unless the cost is waived or subsidized by the state or if the cost of mediation would be an unreasonable burden on either or both of the parties;

(3) The parties have entered into a written marital dissolution agreement or an agreed order resolving all of the pending issues in the divorce, except as provided in subsection (c);

(4) The parties have participated in a settlement conference presided over by the court or a special master;

(5) The court finds a substantial likelihood that mediation will result in an impasse; or

(6) For other cause found sufficient by the court.

Tenn. Code Ann. § 36-4-131 (a) - (b) (2010).

Wife argues that the mandatory nature of "shall" means that mediation was required, and, as there is no waiver of mediation in the record, a new trial is warranted. We note, however, that the statute includes a number of circumstances in which mediation may be waived. According to the Statement of the Evidence, Wife cancelled the proposed mediation session in this case. Contrary to Wife's statement that there is no waiver of mediation in the record, the Trial Court stated in its order denying Wife's motion for a new trial "that the Court in effect waived mediation when the parties did not raise the issue . . . ." Under these facts, we hold that the Trial Court did not err in proceeding to rule on this case without the parties first having engaged in mediation.

We next address whether Wife is entitled to a new trial because interrogatories and request for production for documents were not answered by Husband. Wife argues that the Trial Court should have taken into account Wife's lack of legal knowledge as to discovery procedures. In *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222 (Tenn. Ct. App. 2000), this Court observed that:

> *Pro se* litigants are entitled to fair and equal treatment. *See Childs v. Duckworth*, 705 F.2d 915, 922 (7th Cir. 1983). *Pro se* litigants are not, however, entitled to shift the burden of litigating their case to the courts. *See Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1194 (D.C. Cir. 1983). *Pro se* litigants are not excused from complying with the same substantive and procedural requirements that other represented parties must adhere to. *See Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988).

*Whitaker*, 32 S.W.3d at 227. First, while we acknowledge that Wife acted *pro se* for part of this case and should receive certain forbearance as a result, the courts may not conduct her case for her. Second, the record contains no such attempted discovery by Wife. We find no reversible error of the Trial Court as to this issue.

We next address whether Wife is entitled to a new trial or different distribution of the estate based upon the Trial Court allegedly erring in its allocation of Husband's 401(k) exclusively to Husband. According to an exhibit in the record, Husband's 401(k) was valued at $135,119.03 at the beginning of 2011. By October 2011, the value was stated as $86,794.16. Husband withdrew $55,000 in the intervening time period. Wife asserts that, had Husband not withdrawn that $55,000 from the 401(k), its value would have increased $6,675 for the ten-month period. Wife argues that a new trial is needed to allow discovery of the true increase in the value of the 401(k). Our Supreme Court has stated:

> In summary, then, Tennessee Code Annotated section 36–4–121(b)(2)(C) defines separate property as including "[i]ncome from and appreciation of property owned by a spouse before marriage" but specifically excludes such income and appreciation when it is "characterized as marital property under subdivision (b)(1)." That portion of a 401(k) account existing on the date of marriage remains separate property. Because, however, the account is a "retirement or other fringe benefit right[ ] relating to employment," *id*. at (b)(1)(B), the *entire* net amount of income and appreciation that was experienced in Husband's and Wife's 401(k) accounts during their marriage is characterized as marital property, including that which accrued on the premarital balances. *See also Langschmidt*, 81 S.W.3d at 749 ("Retirement benefits accrued during the marriage clearly are marital property under Tennessee law.").

*Snodgrass v. Snodgrass*, 295 S.W.3d 240, 251 (Tenn. 2009) (emphasis in original).

The Trial Court found that "the [401(k)] has not increased in any value during the course of the marriage, and has, in fact, lost value as most security investments have over

the last several years." The evidence in the record on appeal as presented to us does not preponderate against the Trial Court's finding as to the decline in Husband's 401(k)'s value, and, therefore, no part of Husband's 401(k) could be characterized as marital property.

Finally, we address whether Wife is entitled to a new trial or different distribution of the estate on the basis that the Trial Court allegedly did not comply with its local rules of civil practice. Wife cites Rule 10.01 of the local rules of civil practice in Chancery and Circuit Courts in the Eleventh Judicial District, which requires that parties in a divorce file verified financial statements. Wife notes that the parties failed to comply with this rule. We observe that Rule 10.01(c) states that failure to file the required statements may result in dismissal, continuance of the case, entry of default judgment, or "other appropriate sanctions *in the Court's discretion*." (emphasis added). Moreover, Rule 1.03 of the local rules states: "The Judges of the Court retain discretion to suspend any of these rules for good cause." We believe the Trial Court acted within its sound judgment in keeping with the latitude afforded to it under the local rules. Furthermore, Wife did not raise this issue either at trial or in her motion for a new trial. We find no reversible error as to this issue.

The Trial Court did not err in either its judgment or its denial of Wife's motion for a new trial. We, therefore, affirm the judgment of the Trial Court in its entirety.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Chona S. Hall, and her surety, if any.

_____
D. MICHAEL SWINEY, JUDGE